STATE of Wisconsin, Plaintiff-Respondent,

v.

Brian NELSON, Defendant-Appellant-Petitioner.

Supreme Court

*No. 85–1125–CR. Argued February 9, 1987.—Decided June 1, 1987.*

(Review of a decision of the court of appeals.)

(Also reported in 406 N.W.2d 385.)

419

For the defendant-appellant-petitioner there were briefs by *Martin I. Hanson, Michael J. Fitzgerald* and *Hanson, Gasiorkiewicz and Becker, S.C.,* Racine, and oral argument by *Martin I. Hanson.*

For the plaintiff-respondent the cause was argued by *Michael R. Klos,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

WILLIAM G. CALLOW, J.    This is a review of an unpublished decision of the court of appeals affirming a conviction of the circuit court for Racine county, Judge Emmanuel J. Vuvunas, which found Brian Nelson guilty of first-degree sexual assault.

421

This review presents a number of issues related to the admission of hearsay statements. First, did the trial court err in admitting the out-of-court statements of the alleged victim to two psychologists, Dr. McLean and Dr. Silberglitt? Second, if the out-of-court statements were properly admitted as exceptions to the hearsay rule, did the admittance of these statements violate the defendant's right of confrontation under the United States and Wisconsin Constitutions? Third, did the trial court err in admitting into evidence drawings made by the alleged victim after the prosecutor in the opening statement told the jury that the drawings depicted the defendant as an erect penis? We agree with the court of appeals that the out-of-court statements were admissible as exceptions to the hearsay rule under sec. 908.03(4), Stats.—statements made for the purposes of medical diagnosis or treatment. Furthermore, we agree with the court of appeals that there was no violation of the confrontation clause of the State or Federal Constitution. Finally, we find that the admittance into evidence of the drawings constituted harmless error.

In April of 1984 the defendant, Brian Nelson, was charged with one count of intentionally and feloniously having sexual contact with a person twelve years or younger. The alleged victim of the sexual assault was his daughter, T.N., who was born June 7, 1980. At trial the state presented no eyewitness testimony and did not call T.N. to testify. Instead, the evidence of sexual assault and the evidence linking Brian Nelson to the sexual assault were presented primarily through the testimony of T.N.'s mother, Susan Nelson, T.N.'s treating psychologist, Dr. McLean, and a second psychologist, Dr. Silberglitt.

In April of 1982, Brian and Susan Nelson were divorced. Susan Nelson was granted custody of their daughter, T.N., and the defendant was granted reasonable visitation rights. Shortly after the divorce was finalized, Mitchell Blada moved in with Susan Nelson and T.N. Susan Nelson testified at trial that beginning in August, 1983, T.N. became apprehensive and at times hysterical when the defendant came to pick her up for visitation. According to Susan Nelson, after a visit with the defendant in early August, 1983, T.N. begged not to return to her father's residence. Susan Nelson testified that by October, when she would inform T.N. that T.N. was going to her father's house, T.N. would go "berserk." She would cry and scream, and beg not to go. At this point visitations essentially stopped.

At Christmas, visitation was resumed without incident. However, Susan Nelson testified that shortly thereafter T.N. attempted to pull her mother's pants down while playing a game of tag. According to Susan Nelson, T.N. indicated that daddy had taught her to play tag in this manner. Susan Nelson also testified that on January 20, 1984, T.N. insisted that a picture of Michael Jackson be brought into the bathroom to watch her. T.N. pointed at her vagina and said that Michael Jackson doesn't look like this and "daddy doesn't look like this either." Susan Nelson testified that, when she asked T.N. how she knew this, T.N. responded, "I pulled his underpants down." When Susan Nelson told T.N. that it must have been an accident, T.N. insisted that daddy told her to pull down his underpants and that it was alright because Cheryl, the defendant's second wife, was not at home.

Susan Nelson became suspicious of possible sexual abuse and contacted Dr. McLean to discuss whether

there was a possibility of sexual abuse. Susan had previously been given Dr. McLean's name when she called the court to find out if she "had to force" T.N. to visit the defendant.

Dr. Donald McLean, a clinical psychologist, was called by the state and was qualified by the court as an expert witness in the field of psychology. Dr. McLean's notes had been provided to the defense prior to trial. Defense counsel, outside the presence of the jury, objected on hearsay grounds to Dr. McLean's anticipated testimony concerning statements made by T.N. In explaining the objection, defense counsel stated: "Now, the basic problem with this, as I see it, is that there is a witness then to whom we are denied a right of confrontation." The trial court ruled that the statements made by T.N. were admissible under sec. 907.03, Stats.,[1] since they formed the basis of an expert opinion. The trial court did not rule on the confrontation issue, and defense counsel did not repeat the objection.

Dr. McLean testified to a series of fifty-nine evaluation and treatment sessions with T.N. from January 25, 1984, to September 11, 1984. The treatment sessions were generally conducted in Dr. McLean's play therapy room, although Dr. McLean occasionally spoke with T.N. in his regular office. The play therapy room was set up with games, puzzles, coloring

---

[1]**Section 907.03, Stats.,** provides: "**Bases of opinion testimony by experts.** The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence."

books, dolls, and other toys which allow a child to express oneself through play.

Dr. McLean testified that T.N. had revealed at a number of sessions that she had touched daddy where he went to the bathroom. According to Dr. McLean, he placed anatomically correct male and female dolls in the play therapy room on February 27, 1984. Dr. McLean testified that at the February 28 session, T.N. placed the female doll's face against the genital area of the male doll and said, "she gets mud on her face." Upon being asked what she meant, T.N. replied, "its white and sticky." Dr. McLean testified that in a subsequent session T.N. told him that her father warned her not to talk about the incident and also told her to say that Susan's boyfriend, Mitch, did it.

Dr. McLean related the following conversation with T.N. "Do you pull someone's underpants down and touch him where he goes to the bathroom, and the child said yes ... and I said, well, who is it that you touch where he goes to the bathroom, and the child answered Mitch. And I said you told me it was Daddy. Was it Mitch or Daddy, and the child said Daddy. And I said then why did you say Mitch, and she said it was Mitch, and I said then it was not Daddy. She said it was Daddy, then Mitch, then Daddy, and she answered with he told me to say it was Mitch. I said who told you to say it was Mitch. She said Daddy." Dr. McLean further testified that, when he asked T.N. if she would only tell the truth to anyone who talks to her, she responded, "I don't have to tell the truth."

Dr. McLean also testified that throughout the treatment T.N. was extremely anxious and reluctant to talk about the incident and that at times T.N. would appear depressed and emotionally drained.

Dr. Burton Silberglitt, a clinical psychologist, was also called by the state as an expert witness. The defense raised no objection to his testimony which was based on one session conducted on March 27, 1984. Dr. Silberglitt testified that T.N. tried to ignore discussing her father because it was "discomforting to her and frightening to her and traumatic to her to get into this." According to Dr. Silberglitt, when he brought up T.N.'s father, the child stated that she "played with his thing that he put in the toilet." Dr. Silberglitt further testified that T.N. was very agitated and that it was his recommendation that T.N. engage in therapy with a qualified therapist.

Mary Anne Jensen, a social worker for Racine county, was also called to testify. She testified that on January 29, 1984, T.N. drew a picture which depicted herself and her father. The pictures were marked as exhibits and shown to the jury. Mary Anne Jensen offered no explanation of the drawing's significance. However, in the opening statement to the jury, the state told the jury that the picture drawn by T.N. depicted the defendant as an erect penis. The defense raised no objection to this statement.

At the close of the state's case, the defense made a motion to dismiss, and argued, first, that the hearsay statements of T.N. as related by the psychologists were inadmissible because no expert opinion had been offered and, second, that defendant's right of confrontation had been violated because the state had not shown that T.N. was unavailable as a witness. The state responded that the testimony of the two psychologists demonstrated that T.N. had suffered a severe trauma because of her sexual experiences with her father, that the trauma had not been cured, and that T.N. was "effectively unavailable" to testify at trial.

Defense counsel also argued that the defendant's right to confrontation had been violated because the state did not suggest or consider the possibility of videotaping the child in her home, the psychologist's play room, or in some other noncourtroom setting.

The trial court, in denying the motion to dismiss, ruled that the testimony of Dr. McLean as to what T.N. said during the therapy sessions was admissible hearsay. The trial court also ruled that the testimony made it patently clear that T.N. could not have testified due to her age and the potential trauma. Based on the testimony at trial, the court stated: "I don't think the child would have been available in any sense for what we would determine to be examination or appearance in court or even by videotape or any other electronic means."

The defense then presented its case, including the testimony of two psychologists, Dr. David Nichols and Dr. Walter McDonald. Dr. Nichols testified that at the defendant's request he interviewed T.N. on March 16, 1984. Although Dr. Nichols testified that the interview revealed very little concerning the facts of the alleged sexual assault, Dr. Nichols later testified that T.N. told him that she did not like to visit her father and that she gets white mud on her face. According to Dr. Nichols, T.N. repeatedly either denied sexual contact or stated that she did not want to talk about it. Dr. Nichols concluded that some sexual abuse had occurred and testified that he had made a recommendation to the court that there should be no further visits with the defendant.

Dr. McDonald testified that he had examined the clinical notes of Dr. McLean concerning the treatment of T.N. to determine if there was an alternative explanation for T.N.'s behavior in therapy. According

to Dr. McDonald, T.N.'s increased sexual preoccupation throughout the therapy may be explained by her continual and repeated exposure to the anatomically correct dolls. Dr. McDonald further testified that his explanation was not necessarily more valid than that of Dr. McLean, only that it was an alternative explanation which equally well fit the facts as they were presented to him.

On September 21, 1984, the defendant was found guilty of first-degree sexual assault. A judgment of conviction was entered, and the defendant was sentenced to five years in the Wisconsin State Prison.

On January 28, 1985, the defendant filed post-conviction motions requesting that the verdict be set aside and a new trial ordered. The motions alleged numerous errors, including that the court erred in admitting into evidence the hearsay statements of T.N. through the testimony of Dr. McLean and Dr. Silberglitt and that the use of such evidence denied him his right of confrontation under the sixth and fourteenth amendments of the United States Constitution and Article I, sec. 7 of the Wisconsin Constitution. On March 6, 1985, the trial court heard oral argument on these motions and expressed concern that the defendant's right to confront his accuser had been violated at trial by the court's failure to make a ruling about the unavailability of T.N. No ruling was made, but another hearing was set.

In response to the trial court's comments, the state moved to supplement the record by means of an evidentiary hearing to establish that, at the time of trial, T.N. was an unavailable witness. The defendant objected to this procedure, the issue was briefed, and on April 18, 1985, the trial court granted the state's motion.

The only witness at the hearing was Dr. McLean who was called to testify by the state. He testified that T.N. would not have responded to direct questioning about the alleged sexual abuse and that such questioning could have traumatized her. In addition, Dr. McLean testified that T.N. was very fearful of her father and that the presence of her father would have a very negative effect on her. Dr. McLean agreed that a videotape could have been made of the therapy sessions, but noted that a large number of sessions would have had to be taped because T.N. volunteered information only gradually throughout the course of therapy. The defendant elected not to present testimony from his own psychological experts who had testified at trial. According to the defendant, the lapse of time between the trial and the hearing denied him the ability to present any meaningful evidence. The trial court concluded that, because of the likelihood of trauma and the age of T.N., T.N. was unavailable to testify at trial.

The court of appeals, in a per curiam opinion, affirmed the judgment of the trial court. According to the court of appeals, the testimony of Dr. McLean was properly admitted under sec. 908.03(4), Stats.—statements made for the purpose of medical diagnosis or treatment. The court further concluded that T.N. was unavailable to testify and that the statements of the experts were reliable, thus satisfying the two-pronged confrontation clause analysis outlined in *Ohio v. Roberts,* 448 U.S. 56, 65–66 (1980), and *State v. Bauer,* 109 Wis. 2d 204, 210–11, 325 N.W.2d 857 (1982).

We must first determine whether the out-of-court statements of T.N. were properly admitted into evidence through the testimony of Dr. McLean and Dr. Silberglitt. There is no doubt that the statements

made by T.N. constitute hearsay and that, unless they fall within a recognized exception to the hearsay rule, they are inadmissible. *See* sec. 908.02, Stats. Because we conclude that the out-of-court statements of T.N. are within the hearsay exception as provided by sec. 908.03(4)[2] —statements for purposes of medical diagnosis or treatment—we hold that the statements were properly admitted into evidence as an exception to the hearsay rule.

■

Under sec. 908.03(4), Stats., a doctor may relate a "patient's statements of past or present symptoms or history, including statements of the character or external source of the cause [of the symptoms] insofar as reasonably pertinent to diagnosis or treatment." Judicial Council Committee's Note, Wis. R. Evid., 59 Wis. 2d R265 (1974). Thus a patient's statements to a doctor, as to the cause of an injury, may be introduced into evidence by that doctor if the patient's statements are made for the purposes of diagnosis or treatment. The rationale underlying this exception to the hearsay rule is that the declarant's motive of obtaining improved health guarantees the statement's trustworthiness. Because patients go to doctors to receive

---

[2]The hearsay exception expressed in sec. 908.03(4), Stats., provides:

"The following [is] not excluded by the hearsay rule, even though the declarant is available as a witness:

". . . .

"(4) STATEMENTS FOR PURPOSES OF MEDICAL DIAGNOSIS OR TREATMENT. Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment."

treatment and treatment usually depends in part upon what is said, the declarant has a motive to disclose the truth. *State v. Wyss,* 124 Wis. 2d 681, 710, 370 N.W.2d 745 (1985); 4 J. Weinstein and M. Berger, *Weinstein's Evidence* 803(4) [01] at 803–144 (1985).

In the present case we are concerned with the admissibility of statements made by T.N. to two psychologists, Dr. McLean and Dr. Silberglitt. We begin by noting that the defendant did not object to the hearsay testimony of Dr. Silberglitt. The failure of the defendant to object at trial to the hearsay testimony of Dr. Silberglitt constitutes a waiver of any objection on hearsay grounds. *Caccitolo v. State,* 69 Wis. 2d 102, 113, 230 N.W.2d 139 (1975). Thus our analysis will focus on the admissibility of the hearsay testimony of Dr. McLean.

Although sec. 908.03(4), Stats., is traditionally applied to statements made to a physician, we recognize that statements made to a psychologist, if made for the purposes of diagnosis or treatment, are also admissible under sec. 908.03(4). Thus the key to our analysis of the admissibility of the out-of-court statements of T.N. is whether T.N.'s statements were made for the purposes of diagnosis or treatment.

In the present case a number of factors support a finding that T.N. was aware that her statements were being used as a basis for medical diagnosis or treatment. T.N.'s sessions with Dr. McLean, although mainly conducted in a play therapy room, were scheduled and conducted in a manner consistent with the provision of diagnosis and treatment. Dr. McLean had a waiting room in which T.N. and her mother would await their regularly scheduled appointments.

431

T.N. was aware that she saw Dr. McLean on an appointment basis and that he was not her peer. Very early in the treatment, Dr. McLean made it clear to T.N. that he was an authority figure, not a playmate. T.N. began her treatment with Dr. McLean by undergoing a series of tests and evaluations. Although most of the sessions were conducted in a play therapy room, T.N. would occasionally sit and speak with Dr. McLean in his formal office. T.N. was described as a very intelligent child. We conclude that T.N. was aware that she was being observed, with a goal towards treatment.

Furthermore, there is nothing in the record to indicate that T.N.'s motive in making the statements to Dr. McLean and Dr. Silberglitt was other than as a patient seeking treatment. It is always difficult for a court to determine whether a very young child completely understands the context in which information is sought from that child. However, we do not believe that, because a child is only three or four years of age at the time he or she goes to a doctor, the child is unable to comprehend that the child is involved in the process of receiving diagnosis or treatment. A child is no less aware of the existence of emotional or mental pain than physical pain and, thus, is equally aware of the necessity and beneficial nature of therapy.

Just as a child three or four years of age understands that statements made to a physician will be used by that physician to ease the physical pain of the child, we conclude that such a child also understands that statements made to a psychologist will be used by the psychologist to ease the emotional or psychological injuries of the child. *Cf. United States v. Nick,* 604 F.2d 1199, 1201–02 (9th Cir. 1979) (court admitted,

under Rule 803(4) of the Federal Rules of Evidence, statements made by a three-year-old to a physician as to the cause of an injury); *People v. Oldsen,* 697 P.2d 787, 788–89 (Colo. App. 1984) (court admitted statements made by a five-year-old to a school psychologist under an exception to the Colorado hearsay rule which is identical to sec. 908.03(4), Stats.). We therefore conclude that T.N.'s statements to Dr. McLean were made with the understanding that there was a purpose for these sessions and with the knowledge that the communication growing out of these sessions would be beneficial to her. Accordingly, T.N.'s statements to Dr. McLean are sufficiently reliable and trustworthy to fall within the exception to the hearsay rule provided by sec. 908.03(4), Stats.

Having concluded that T.N.'s statements were made with the knowledge that they were to be used as a basis for diagnosis or treatment, we must now determine whether it was proper for the court to admit T.N.'s statements as to whom her abuser was instead of admitting only her statements that she was abused. The general rule is that statements as to who was at fault are ordinarily inadmissible under the exception for statements made for purposes of diagnosis or treatment. Federal Advisory Committee's Note, Wis. R. Evid., 59 Wis. 2d R266 (1974); *United States v. Iron Shell,* 633 F.2d 77, 84 n. 10 (8th Cir. 1980), *cert. denied* 450 U.S. 1001 (1981); *United States v. Renville,* 779 F.2d 430, 436 (8th Cir. 1985). The reason behind this rule is that statements identifying the assailant seldom are made to promote effective treatment. *Id.*

However, while treatment of a physical injury would rarely require disclosure of the identity of the assailant, it is recognized that disclosure of the

identity of the assailant is reasonably necessary to provide treatment for a victim of child abuse. *See People v. Wilkins,* 134 Mich. App. 39, 45, 349 N.W.2d 815 (1984); *Oldsen,* 697 P.2d at 788–89; *Renville,* 779 F.2d at 436. Child abuse cases often involve emotional and psychological injuries as well as a physical injury. Treatment of these emotional and psychological injuries of a child abuse victim often depends upon the identity of the abuser.

In the present case T.N. was alleged to have been sexually abused by her father. Proper psychological treatment necessitates a determination of the relationship of the abuser to the abused child. We can safely assume that the trauma arising from an assault by someone in as close and as trusting a relationship as one's father would be different from the trauma associated with an assault by someone who was in a less trusted position. For a psychologist to treat such a trauma most effectively, the psychologist needs to know the exact relationship of the assailant to the victim. Furthermore, complete treatment often involves separation of the assailant from the victim. Where the assailant has a legal right to be with the victim, proper treatment could necessitate the cessation of this right. We therefore conclude that T.N.'s identification of the defendant as the assailant was a necessary element for those charged with determining appropriate diagnosis or treatment. Accordingly, we hold that Dr. McLean's testimony as to the hearsay statements made by T.N. was properly admitted into evidence.

The defendant argues that under *Klingman v. Kruschke,* 115 Wis. 2d 124, 339 N.W.2d 603 (Ct. App. 1983), statements made for the purpose of medical

diagnosis or treatment may not be related under sec. 908.03(4), Stats., unless the statements were used as a basis for forming an expert opinion. We disagree. The court in *Klingman* held that sec. 908.03(4) "permits a chiropractor, *consulted only for purposes of testimony,* to relate the patient's self-serving statements when those statements are used to form a medical opinion." *Id.* at 126 (emphasis added). The *Klingman* court did not discuss whether a health professional, consulted for purposes of medical diagnosis or treatment, may relate statements regardless of whether the statements are used to form a medical opinion.

It is well recognized that statements made for the purposes of medical diagnosis or treatment are admissible because the patient's strong motivation to have improved health guarantees the statements' trustworthiness. Although the absence of this strong motivation for trustworthiness (where the doctor is consulted solely for the purpose of testimony) may necessitate separate or additional evidence of trustworthiness, we hold that statements made for the purposes of medical diagnosis or treatment are sufficiently reliable to be admissible without any additional indicia of trustworthiness. Accordingly, we reject the defendant's contention that statements made for purposes of medical diagnosis or treatment are only admissible if used as basis to form an expert opinion.

The second issue is whether the admission into evidence of the hearsay statements by T.N. to Dr. McLean violated the defendant's right to confront the witnesses against him.[3] The right to confront wit-

---

[3]In *State v. Bauer,* 109 Wis. 2d 204, 210, 325 N.W.2d 857 (1982), we noted that the threshold inquiry before analyzing a confrontation clause question is to determine if the evidence is

nesses against oneself is guaranteed by the confrontation clause of the sixth amendment of the United States Constitution and Article I, sec. 7 of the Wisconsin Constitution. The sixth amendment's confrontation clause, made applicable to the states through the fourteenth amendment, *Pointer v. Texas,* 380 U.S. 400, 403 (1965), provides: "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." Article I, sec. 7 of the Wisconsin Constitution similarly provides: "In all criminal prosecutions the accused shall enjoy the right ... to meet the witnesses face to face."[4]

It has long been recognized that the confrontation clause is not absolute. A literal reading would require, upon objection, the exclusion of any statement made by a declarant not present at trial. However, such an application would abrogate virtually every hearsay exception, a result rejected as unintended and too extreme. *Ohio v. Roberts,* 448 U.S. at 63. The United States Supreme Court has recognized that the right to confrontation "may, in appropriate cases, bow to accommodate other legitimate interests in the crimi-

admissible under the Wisconsin Rules of Evidence. If the evidence does not fit within a recognized hearsay exception, it must be excluded. Only after it is established that the evidence is admissible under a hearsay exception does it become necessary to consider the confrontation clause. Having already concluded that the evidence sought to be introduced in the present case is admissible under the Wisconsin Rules of Evidence, sec. 908.03(4), Stats., we now consider the confrontation clause.

[4]We have previously held that the confrontation rights under both constitutions are identical. *State v. Burns,* 112 Wis. 2d 131, 144, 332 N.W.2d 757 (1983). Accordingly, the same legal analysis will be applied in protecting the accused's rights under the confrontation clause of both the State and Federal Constitutions.

nal trial process." *Chambers v. Mississippi,* 410 U.S. 284, 295 (1973).

The primary purpose of the confrontation clause is to assist the accuracy of the truth-determining process in criminal trials by assuring that the trier of fact has a satisfactory basis for evaluating the truthfulness of admitted evidence. *State v. Bauer,* 109 Wis. 2d 204, 208, 325 N.W.2d 857 (1982); *Dutton v. Evans,* 400 U.S. 74, 89 (1970). Thus a statement's indicia of reliability is determinative of whether a statement may be placed before the jury though there is no confrontation of the declarant. *Hagenkord v. State,* 100 Wis. 2d 452, 472, 302 N.W.2d 421 (1981); *Dutton,* 400 U.S. at 89.

In *Ohio v. Roberts,* 448 U.S. at 65–66, the Supreme Court set forth a two-step test approach to determine whether the use of hearsay evidence is consistent with the requirements of the confrontation clause. The first step is to inquire whether the prosecution has either produced or demonstrated the unavailability of the declarant whose statement it wishes to use against the defendant. Generally, a witness's unavailability is not demonstrated unless the prosecution has shown that it "made a good-faith effort to obtain his presence at trial." *Barber v. Page,* 390 U.S. 719, 724–25 (1968). Notwithstanding this obligation, if there is no possibility of procuring the witness, the "good-faith" requirement disappears. The length to which the prosecution must go to produce a witness is a question of reasonableness. *Ohio v. Roberts,* 448 U.S. at 74. However, as this court noted in *Bauer,* there are limited exceptions to the requirement that available witnesses be produced. Thus, available witnesses need not be produced

where production would be unduly inconvenient and of small utility to the defendant. 109 Wis. 2d at 212–13.

Once a witness is shown to be unavailable, the next step is to inquire whether the hearsay statement bears adequate indicia of reliability.[5] *Ohio v. Roberts,* 448 U.S. at 66. In determining whether the hearsay statement bears adequate indicia of reliability, the Court noted that "certain hearsay exceptions rest upon such solid foundations that admission of virtually any evidence within them comports with the 'substance of the constitutional protection.'" *Id.* Thus, if the evidence falls within a firmly rooted hearsay exception, reliability can be inferred and the evidence is generally admissible. In *Bauer,* however, we noted that this does not mean that the evidence is admissible per se. "The trial court must still examine each case to determine whether there are unusual circumstances which may warrant exclusion of the evidence." 109 Wis. 2d at 213–14. The existence of unusual circumstances does not mean that a statement is inadmissible. Notwithstanding the existence of unusual circumstances, the statement may be admitted where "the trier of fact has a reasonable basis for evaluating the truthfulness of the prior statement." *Id.* at 214. Furthermore, if the evidence does not fall within a firmly rooted hearsay exception, it may still be admissible if there is a showing of

---

[5]The Supreme Court, in explaining the test to determine whether a hearsay statement is reliable, has emphasized the trustworthiness of the statement and the ability of the trier of fact to evaluate the truthfulness of the statement. *Ohio v. Roberts,* 448 U.S. 56, 65–66 (1980).

"particularized guarantees of trustworthiness." *Ohio v. Roberts,* 448 U.S. at 66.

■

In this case the defendant argues that the trial court's failure to rule, in a timely manner, on his objection to the admission of T.N.'s hearsay statements to Dr. McLean violated his right to confrontation. Specifically, the defendant contends that his objection, prior to Dr. McLean testifying, that the admission of T.N.'s statements through Dr. McLean violated his right to confrontation, required the trial court to determine whether T.N. was available and, if so, whether her statements were reliable. It is apparent from the trial court's ruling that it was not aware that the defendant's initial challenge was based upon anything other than a question of hearsay. We have previously stated that an objection on the grounds of hearsay does not serve to preserve an objection based on the constitutional right to confrontation. *See State v. Marshall,* 113 Wis. 2d 643, 653, 335 N.W.2d 612 (1983). Regardless of whether the defendant properly raised his objection based on the right of confrontation, we conclude that the trial court correctly determined in the post-conviction hearing on unavailability that the confrontation clause guarantees were satisfied.[6]

---

[6]We agree with the defendant's contention that the trial court's ruling on his motion to dismiss at the close of the state's evidence did not satisfy the confrontation clause. It is clear that defendants must be given the opportunity to rebut the prosecution's argument that a party is unavailable. However, we conclude that the retrospective inquiry at the post-conviction hearing adequately accommodated the defendant's right to rebut the state's position.

Although an orderly criminal process will best be effectuated by an availability hearing at or prior to trial, the absence of such a hearing does not automatically entitle a defendant to a new trial. A defendant's constitutional right to confrontation may, in certain circumstances, be adequately protected by a retrospective determination of availability. In *State v. Johnson,* 133 Wis. 2d 207, 224–25, 395 N.W.2d 176 (1986), we held that, where an adequate and meaningful hearing is possible, a retrospective determination of the accused's competency to stand trial should be held instead of automatically granting a new trial. The inquiry in *Johnson* and in the present post-conviction hearing on availability both involve an analysis of an individual's mental state at the time of trial. We conclude that the reasoning of *Johnson* is equally applicable to the question of availability in the present case. Thus, the use of a post-conviction hearing will be upheld if it afforded an adequate and meaningful hearing on T.N.'s availability.

In the present case the post-conviction determination of T.N.'s availability at the time of trial was held approximately eight months after the trial ended. Only one witness, Dr. McLean, the treating psychologist, testified at the availability hearing. However, the state and the defendant both had an opportunity to examine Dr. McLean and to bring in additional experts to analyze T.N.'s availability based on the testimony of Dr. Silberglitt and Dr. McLean's notes and testimony at trial. Moreover, Dr. McDonald, a psychologist retained by the defendant, who had prior to trial reviewed reports and evaluations written by Dr. McLean was not called to testify. Dr. McDonald testified at trial concerning the treatment sessions and could have been called to testify at the availabili-

ty hearing. In addition, a second defense psychologist, Dr. Nichols, had reviewed Dr. McLean's case report on T.N. and had interviewed T.N., her father, her mother, and her mother's boyfriend prior to trial. Although Dr. Nichols could have testified at the availability hearing, the defendant did not call him. Based on these factors, we find that an adequate and meaningful retrospective determination of availability was possible. We therefore conclude that the trial court was correct in holding such a hearing.

Our conclusion that the trial court was correct in holding a retrospective hearing on availability does not condone deliberately delaying a determination of availability until after trial. The appropriate procedure is for the trial court, either upon objection raised by the defense or upon motion of the prosecutor, to hold a separate availability hearing prior to the admission of the disputed testimony.

■■

Having determined that the use of a retrospective post-conviction hearing was acceptable in the present case, we now turn to review the conclusion of the trial court that T.N. was in fact unavailable. We agree with the court of appeals that the trial court's finding that T.N. was unavailable to testify is amply supported by evidence in the record. This case is not concerned with the typical question of analyzing the effort of the state to produce the physical presence of a witness. Rather, we are concerned with whether the state should be required to produce a four-year-old old (at the time of trial) child who was diagnosed as suffering considerable emotional trauma.

At the post-conviction availability hearing, Dr. McLean testified at great length about T.N.'s inability to testify at trial and the effect that such an experi-

ence would have on her emotional state. Dr. McLean testified that T.N. would not have responded to direct questioning about the sexual abuse and that such questioning would have traumatized her. According to Dr. McLean, T.N. was not the type of child who responded well when confronted with trauma, even when questioned by someone with whom she had a trusting relationship. Dr. McLean also testified that T.N. was extremely fearful of her father and that she would be unlikely to answer any questions if her father were present. Although Dr. McLean acknowledged that videotaping which did not interrupt treatment might have been possible, he stated that the videotaping would have had to continue for many sessions. Finally, Dr. McLean noted that there would be a considerable risk of regression if T.N. was questioned about the sexual abuse.

It is apparent from Dr. McLean's testimony that to require T.N. to testify in court would exact a considerable toll on T.N.'s well-being. Although we recognized in *State v. Gilbert,* 109 Wis. 2d 501, 326 N.W.2d 744 (1982), that there exists a strong policy in favor of having a witness testify, there also exists a point at which we will not force a potential witness to testify. One commentator has noted that "[i]t is generally agreed by child psychiatrists that the degree of psychic trauma is as much, or perhaps more, dependent on the way that the child victim is treated after discovery than at the time of the offense itself." Libai, *The Protection of the Child Victim of a Sexual Offense in the Criminal Justice System,* 15 Wayne L. Rev. 977, 980–81 (1969). Several components of the legal system, including repeated interrogations and cross-examination, facing the accused again, and the official atmosphere of the court, have been identified

as being capable of putting a child victim under prolonged mental stress and endangering his or her emotional equilibrium. *Id.* at 984.

As we have previously noted, the right to confront and cross-examine is not absolute and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process. Society's increased awareness of incest and child abuse have spurred both judicial and legislative efforts to protect child victims. The likelihood that any questioning of T.N. would cause severe trauma, as well as the uncertain efficacy of such questioning, leads us to conclude that T.N. was unavailable to testify at trial.

Moreover, we are not convinced that the possibility of using videotaped therapy sessions requires a finding that T.N. was available to testify. At the time of trial, our statutes sanctioned the use of videotaped depositions in lieu of testimony only where the defendant was able to cross-examine the witness at the time of the taking of the videotaped deposition. *See* sec. 967.04(7), Stats. (1983–84). Dr. McLean's testimony indicated that videotaping would have been possible only if it did not interrupt therapy. We find it unlikely that videotaping, which included cross-examination by the defendant, could have been conducted without a damaging effect on therapy. In addition, Dr. McLean testified that any videotaping would have had to be conducted over a long period of time because of the nature of T.N.'s therapy. Because of these limitations on the use of videotaped testimony, we decline to require the use of videotaped testimony in the present case.

Our determination that T.N. was unavailable to testify at trial does not end our analysis. Once a witness is shown to be unavailable, the final step is to

inquire whether the hearsay statement bears adequate indicia of reliability. Under this last step, if the evidence fits within a firmly rooted hearsay exception, reliability can be inferred and the evidence is generally admissible. However, the existence of unusual circumstances may warrant exclusion of the evidence even if it falls within a firmly rooted exception. If the evidence does not fall within a firmly rooted hearsay exception, it may still be admissible if there is a showing of particularized guarantees of trustworthiness.

We conclude that the hearsay statements in the present case meet the standards for reliability set forth in prior confrontation clause cases. This court recently held that statements admitted under sec. 908.03(4), Stats., meet "'the requirement of reliability for confrontation purposes, in the absence of unusual circumstances.'" *State v. Wyss,* 124 Wis. 2d at 710. Having previously determined that T.N.'s statements to Dr. McLean were properly admitted into evidence under sec. 908.03(4), we need only inquire whether there exists unusual circumstances which undercut their trustworthiness.

Although the application of sec. 908.03(4), Stats., to a psychologist-patient situation in which the patient is between three and four years of age may, in and of itself, constitute unusual circumstances, we are confident that a number of factors support the admission of T.N.'s hearsay statements. First, we find that the cross-examination of Dr. McLean, his methodology, and his conclusions, in conjunction with the availability of his entire set of notes from the treatment sessions combined to assure that the jury had a satisfactory basis for evaluating the truthfulness of

the admitted evidence. Dr. McLean's testimony on direct examination provided the jury with a detailed review of his therapy sessions with T.N. The defendant's attorney, with the aid of Dr. McLean's notes from T.N.'s therapy sessions, subjected Dr. McLean to a comprehensive cross-examination. The trial court's pretrial decision to make Dr. McLean's notes available to the defense provided an excellent opportunity for the defense to analyze the credibility of T.N.'s statements during therapy, as well as the testimony and recollection of Dr. McLean. In addition, the defense retained Dr. McDonald to review Dr. McLean's notes. On direct examination, Dr. McDonald provided the jury with his own interpretation of T.N.'s statements and a careful critique of Dr. McLean's methodology and conclusions. Based on this extensive inquiry into T.N.'s therapy sessions, we conclude that sufficient indicia of reliability exists to satisfy the confrontation clause.

We note that T.N.'s statements, that she did not have to tell the truth, and her conflicting statements about whether it was daddy or Mitch that she touched, do not diminish the admissibility of those statements. The testimony was admitted and then subjected to considerable cross-examination. Because of the availability of a means (notes and testimony of Dr. McLean) to cross-examine the statements, we are satisfied that the jury had the opportunity to evaluate the truthfulness of the statements.

In addition, we find that the age of the declarant and the nature of the allegations manifest indicia of trustworthiness. Although there exists considerable debate as to whether out-of-court statements by children which allege sexual abuse are intrinsically reliable, there is significant support for the proposi-

tion that such statements are reliable. *See* Note, *The Testimony of Child Victims in Sex Abuse Prosecutions: Two Legislative Innovations,* 98 Harv. L. Rev. 806, 819–20 n. 92 (1985); Note, *A Comprehensive Approach to Child Hearsay Statements in Sex Abuse Cases,* 83 Colum. L. Rev. 1745, 1751 (1983); *W.C.L. v. People,* 685 P.2d 176, 182–83 (Colo. 1984). One commentator noted two justifications for finding such statements trustworthy: "First, it is highly unlikely that children persist in lying to their parents or other figures of authority about sex abuse. Second, children do not have enough knowledge about sexual matters to lie about them." Note, *Child Hearsay,* 83 Colum. L. Rev. at 1751 (footnotes omitted).

We conclude that the admission into evidence of the out-of-court statements by T.N. to Dr. McLean did not violate the confrontation clause of either the State or Federal Constitution.

We now turn to the defendant's contention that the trial court erred in admitting into evidence the two drawings made by T.N. The defendant argues that the drawings should not have been admitted into evidence because they did not have a proper sponsoring witness. The state concedes that the drawings are hearsay and that there was an inadequate foundation for their admission. However, because there was no objection to the admission of the drawings, we limit our review to whether the admission of the drawings constituted plain error.

The drawings admitted into evidence contain sketches which are clearly not recognizable. Even considering the assertion by the state that one of the drawings depicted T.N.'s father as an erect penis, we conclude that the drawings could have had little, if

any, prejudicial impact upon the jury. Furthermore, without expert analysis, the drawings had no probative value; thus there is no reasonable possibility that their admission contributed to the conviction. Because we conclude that there was no reasonable possibility that the admission of the drawings contributed to the conviction, we hold that their admission was harmless error. *See State v. Dyess,* 124 Wis. 2d 525, 543, 370 N.W.2d 222 (1985).

*By the Court.*—The decision of the court of appeals is affirmed.

HEFFERNAN, CHIEF JUSTICE (*dissenting*). The rationale of the court's opinion rests upon a misunderstanding of the exception to the hearsay rule that is permitted by sec. 908.03(4), Stats. That exception pertains to:

> "STATEMENTS FOR PURPOSES OF MEDICAL DIAGNOSIS OR TREATMENT. Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment."

The exception is founded upon the perception that a person who is being attended by a physician will accurately and truthfully state a condition or recount a symptom, because only by so doing can the condition be properly treated and the malady alleviated. As McCormick *Evidence* (hornbook series 1954), sec. 266, p. 563 (the authority relied upon by our Code of Evidence, 59 Wis. 2d R1 (1973)), states, such statements are reliable because "the patient knows that

447

the kind of treatment he receives, and its value and helpfulness, may largely depend on the accuracy of the information which he gives to the doctor." *See also,* McCormick, *Evidence,* sec. 292, p. 839 (1984). That element of reliability, despite the unsupported assertions of the majority, are absent here. The patient was three years old, there was no evidence that the child had any idea that the numerous sessions with the psychologist were for the purpose of treatment. Indeed, the record shows that the technique of eliciting information from the child was to simulate play. Thus, while there was no circumstance that would tend to cause a person, even in a *post litem motem* situation, to not tell the truth, the affirmative evidence of reliability that would be induced by a consciousness of the fact of treatment was entirely absent. The assertion that the interrogator was an authority figure is irrelevant to the rationale of the exception. There is no hearsay exception for statements made to authority figures. Unfortunately, it is the court here which gives recognition to the psychologist as an authority figure. Under this evidentiary scheme, the credence is being given not to the child, whose reliability is not enhanced by the circumstances, but to the hearsay testimony of the reporting psychologist.

This opinion warps the rules of evidence to allow the admission of evidence that is not reliable enough to qualify as an exception to the rule against hearsay. The admission of the evidence was erroneous and was prejudicial. I would reverse the conviction and order a new trial.

In addition, it appears that, from the outset of this case, the state has taken the position that T.N. must either testify as a conventional courtroom witness or

not testify at all. Such a position is both contrary to this court's decision in *State v. Gilbert*, 109 Wis. 2d 501, 326 N.W.2d 744 (1982),[1] and unwarranted in light of the amount of attention that has recently been devoted to alternative means of testimony for child-witnesses. The various alternative methods whereby a child can avoid the trauma of testifying in court as a conventional witness, and yet have his or her testimony heard b the trier of fact, have been exhaustively researched and discussed in the past decade. *See for example*, Eatman & Bulkley, *Protecting Child Victim/Witnesses*, 17–36 (1986); ABA, *Papers From a National Policy Conference on Legal Reforms in Child Sexual Abuse Cases* (1985), *see also, State v. Gilbert*, 109 Wis. 2d 501, 514, 518, notes 18 and 24.

Both the Judicial Council and the legislature of this state have demonstrated an awareness of the potential problems of requiring child witnesses to testify in a conventional manner. The Judicial Council studied the matter for approximately one year and ultimately made recommendations regarding the use of videotaped depositions for child witnesses. Minutes of the Judicial Council 5/18/84–4/30/85. These recommendations led to the adoption by the legislature of sec. 967.04(7)-(10), Stats. This statute sets out particular circumstances under which a court may order a videotaped deposition of a child witness in lieu of live

[1]In *Gilbert*, this court observed, "While we have found much public, legislative, and judicial concern for the needs and well-being of the child-victim-witnesses, we have not found any suggestion in the legal literature that the child be excused completely from giving testimony and that the child's testimony not be available in the criminal proceeding." 109 Wis. 2d at 515–16.

courtroom testimony. There is no suggestion that a child may be excused altogether from testifying.[2]

It is obviously of great importance that the testimony of the child be available if reliability can be reasonably assured. That is the goal this court should strive for. It can, I believe, be reached by utilizing the techniques explored by recent research. It cannot be reached by the shortcut method approved herein by the majority.

The state's failure to explore or seriously consider alternatives to conventional courtroom testimony in the present case is disturbing. The majority's acceptance of the state's failure, in view of our own past precedents, is inexplicable.

I dissent.

I am authorized to state that JUSTICES ABRAHAMSON and BABLITCH join in this dissent.

---

[2]Nor do the ABA *Guidelines for the Fair Treatment of Child Witnesses in Cases Where Child Abuse is Alleged* (approved July 10, 1985) go so far as to suggest that a child victim/witness should be completely excused from testifying at trial. These guidelines do not even approve of the use of videotaped depositions in criminal proceedings.