STATE of Wisconsin, Plaintiff-Respondent,†

v.

Eugene HUNTINGTON, Defendant-Appellant-Petitioner,

Supreme Court

No. 96–1775–CR. Oral argument November 6, 1997.—Decided March 20, 1998.

(Also reported in 575 N.W.2d 268.)

†Motion for reconsideration denied April 24, 1998.

For the defendant-appellant-petitioner there were briefs and oral argument by *Jack E. Schairer*, first assistant state public defender.

For the plaintiff-respondent the cause was argued by *Marguerite M. Moeller*, assistant attorney general, with whom on the brief was *James E. Doyle*, attorney general.

¶1. ANN WALSH BRADLEY, J. The defendant, Eugene Huntington, seeks review of an

unpublished decision of the court of appeals that affirmed his conviction[1] on three counts of felonious sexual assault of a child under age 13. The defendant challenges testimony concerning the child's statements to others as inadmissible hearsay and argues that an expert witness improperly testified concerning another witness's credibility. Because we determine that the evidence of the child's statements to others falls within recognized hearsay exceptions or constitutes harmless error, and because we conclude that the State's expert witness did not offer an impermissible opinion on the truthfulness of another witness, we affirm the decision of the court of appeals.

¶ 2. At approximately 10:00 p.m. on the evening of August 19, 1994, a hysterical 11-year-old Jeri E. called her mother from a friend's home where she had been planning on staying the night. She told her mother that she had been sexually abused by her stepfather, Eugene Huntington. When Jeri's mother arrived to pick Jeri up ten minutes later, she observed that "her girlfriend's mother was holding her, Jeri was sobbing hysterically and she came running to my arms."

¶ 3. Shortly after returning home, Jeri's sister, Dawn, arrived to find both the mother and child crying and upset. Jeri first told her mother and then her sister that on numerous occasions,[2] while staying overnight with him, the defendant would come into her room and rub her "private parts," both above and below her underwear, insert one of his fingers into her vagina, and make her rub his penis. Jeri also alleged that on

---

[1] Circuit Court for Washburn County, Warren E. Winton, Judge.

[2] Jeri's statements are inconsistent concerning the number of occurrences of sexual abuse.

one occasion the defendant got on top of her and started moving "up and down." In speaking privately with Dawn, Jeri continued to cry and told Dawn how scared she was and that she thought that it was her own fault that her stepfather did this to her. While the evidence is inconclusive on the issue, the last instance of abuse allegedly occurred two weeks prior to Jeri's disclosure of the abuse to her mother and sister.

¶ 4. Within two hours of first revealing the allegations of abuse to her mother, Jeri was taken to the Spooner Police Department and interviewed by Officer Glau. While she seemed initially shy and fidgeted, Jeri repeated her allegations against the defendant. She remained upset and crying and Officer Glau had to stop the interview and wait for Jeri to regain her composure on several occasions.

¶ 5. Almost three months later, Jeri was also examined by Nurse Diane McCormick to determine the extent of her physical abuse, to evaluate the existence of physical injury, and to develop an appropriate plan of treatment and counseling. McCormick is a pediatric nurse practitioner with a subspecialty in child abuse and neglect. She is on staff with Dr. Carolyn Levitt, the State's expert in this case, at the Midwest Children's Resource Center. Jeri was referred to the center by Lori Carter Bell, the tribal therapist working with Jeri, and by the Washburn County Social Services Department. As part of her initial examination of Jeri, McCormick interviewed both Jeri's mother and Bell. Both women repeated Jeri's allegations to McCormick.

¶ 6. Three evidentiary rulings are the focus of the defendant's challenge. First, the defendant filed a pre-trial motion in limine asking the circuit court to exclude or limit the testimony of potential witnesses, including that of Jeri's mother, her sister, and Officer

678

Glau.[3] The defendant contended that the child's statements to the mother, sister, and officer constituted impermissible hearsay that did not meet the requirements of the excited utterance exception as applied to child abuse cases and explained in *State v. Gerald L. C.*, 194 Wis. 2d 548, 535 N.W.2d 777 (Ct. App. 1995). The circuit court denied the motion.

¶ 7. Second, McCormick testified at trial about her examination of Jeri. McCormick repeated her initial conversations with Bell and Jeri's mother, which included the accusations that Jeri made against the defendant. The defense objected that such statements were double hearsay. The circuit court overruled the objection on the grounds that the testimony fell within the medical diagnosis or treatment exception to the hearsay rule.

¶ 8. Finally, the jury also heard testimony from the State's child sexual abuse accommodation expert, Dr. Carolyn Levitt. The State asked Dr. Levitt to comment concerning whether the facts of Jeri's allegations of abuse, such as her delay in reporting the abuse and her inability to quantify the exact number of instances of abuse, were consistent with the behavior of child abuse victims. Despite defense counsel's objection that the questions called for an inadmissible assessment of Jeri's credibility, the circuit court permitted Dr. Levitt to respond.

¶ 9. The jury found the defendant guilty on three of the six counts of felonious sexual assault of a child under age 13 contrary to Wis. Stat. § 948.02(1).[4] The

---

[3] Bell did not testify in the criminal trial.

[4] Wis. Stat. § 948.02 states:

Sexual Assault of a child. (1) FIRST DEGREE SEXUAL ASSAULT. Whoever has sexual contact or sexual intercourse with

defendant appealed, and the court of appeals affirmed the conviction.

¶ 10. The court of appeals determined that the circuit court properly admitted the statements of the mother, sister, and Officer Glau as excited utterances. The court also rejected the defendant's interpretation of Dr. Levitt's testimony, declaring that Dr. Levitt did not offer an opinion on Jeri's truthfulness. Finally, the court of appeals found Nurse McCormick's testimony admissible. The appellate court determined that Jeri's statements to her mother were excited utterances and that the mother's recital of such statements to Mc Cormick were made for purposes of medical diagnosis or treatment. The court of appeals also determined that both Jeri's statements to Bell and Bell's recounting of those statements to McCormick fell within the medical diagnosis or treatment exception to the hearsay rule.

I. Application of Exceptions to Hearsay Rule.

██

¶ 11. The admission of out-of-court statements pursuant to an exception to the hearsay rule is a determination left to the discretion of the circuit court. *See State v. Moats,* 156 Wis. 2d 74, 96, 457 N.W.2d 299 (1990). Because the circuit court is better able to weigh the reliability of circumstances surrounding out-of-court statements, "we look not to see if we agree with the circuit court's determination, but rather whether the trial court exercised its discretion in accordance with accepted legal standards and in accordance with

a person who has not attained the age of 13 years is guilty of a Class B felony.

Unless otherwise indicated, all statutory references are to the 1995–96 volumes.

the facts of record." *Grube v. Daun*, 213 Wis. 2d 533, 542, 570 N.W.2d 851 (1997) (internal citations omitted); *see also State v. Martinez*, 150 Wis. 2d 62, 71, 440 N.W.2d 783 (1989). If we can discern a reasonable basis for its evidentiary decision, then the circuit court has not committed an erroneous exercise of discretion. *See State v. Sorenson*, 143 Wis. 2d 226, 240, 421 N.W.2d 77 (1988).

### A. Statements of Mother, Sister, and Officer Glau as Excited Utterances.

¶ 12. The State contended at trial that Jeri's statements to these three parties were admissible either as an excited utterance under Wis. Stat. § 908.03(2), or under the general residual hearsay exception set forth in Wis. Stat. § 908.03(24).[5] The circuit court and court of appeals agreed, and held that the statements to Jeri's mother and sister and Officer Glau fell within the excited utterance exception.

¶ 13. "The excited utterance exception. . .is based upon spontaneity and stress" which, like the bases for all exceptions to the hearsay rule, "endow such state-

---

[5] Wis. Stat. § 908.03 declares:

Hearsay Exceptions; availability of declarant immaterial. The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

. . .

(2) EXCITED UTTERANCE. A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.

. . .

(24) OTHER EXCEPTIONS. A statement not specifically covered by any of the foregoing exceptions but having comparable circumstantial guarantees of trustworthiness.

681

ments with sufficient trustworthiness to overcome the reasons for exclusion of hearsay." *Martinez*, 150 Wis. 2d at 73 (quoting *Christensen v. Economy Fire & Casualty Co.*, 77 Wis. 2d 50, 56–57, 252 N.W.2d 81 (1977)).

Accordingly, the excited utterance exception has three requirements. First, there must be a "startling event or condition." *Muller v. State*, 94 Wis. 2d 450, 466, 289 N.W.2d 570 (1980). Second, the declarant must make an out-of-court statement that relates to the startling event or condition. Finally, the related statement must be made while the declarant is still "under the stress of excitement caused by the event or condition." *Id.* Essentially, "[i]t must be shown that the statement was made so spontaneously or under such psychological or physical pressure or excitement that the rational mind could not interpose itself between the spontaneous statement or utterance stimulated by the event and the event itself." *Martinez*, 150 Wis. 2d at 73 (quoting *Wilder v. Classified Risk Ins. Co.*, 47 Wis. 2d 286, 292, 177 N.W.2d 109 (1970)).

¶ 14. This court has also recognized that "there is a compelling need for admission of hearsay arising from young sexual assault victims' inability or refusal to verbally express themselves in court when the child and the perpetrator are sole witnesses to the crime." *Sorenson*, 143 Wis. 2d at 243. Accordingly, in some cases, where a child has made an allegation of sexual abuse that does not immediately follow the incident, Wisconsin appellate courts have liberally construed the excited utterance exception to hold such statements sufficiently contemporaneous and spontaneous to fall within the exception. *See Sorenson*, 143 Wis. 2d at 244–45; *Moats*, 156 Wis. 2d at 97; *see, e.g., State v. Gilbert*, 109 Wis. 2d 501, 515, n.21, 326 N.W.2d 744

(1982); *State v. Padilla*, 110 Wis. 2d 414, 420, 329 N.W.2d 263, 266 (Ct. App. 1982).

■

¶ 15. This application is consistent with the view that "time is measured by the duration of the condition of excitement rather than mere time elapse from the event or condition described." *Moats*, 156 Wis. 2d at 97 (quoting *Muller*, 94 Wis. 2d at 467). It is supported by the theory that the immature emotional and psychological characteristics of children extend the time in which statements are likely not the result of "conscious fabrication." *Gerald L.C.*, 194 Wis. 2d at 556–57 (citing 2 *McCormick on Evidence* § 272.1, at 224 (John W. Strong ed., 4th ed. 1992)).

¶ 16. Allegations of sexual abuse by children are not, however, pro forma guaranteed admission as excited utterances in proceedings against their abusers. In *Gerald L.C.*, the court of appeals rejected the State's offer of a 14-year-old's statement to a police officer that accused the defendant of sexual assault as neither an excited utterance nor sufficiently trustworthy to invoke the residual hearsay exception. In surveying the law of this state for application of the excited utterance exception to child abuse cases, the *Gerald L.C.* court distilled three common factors arguing for its application: (1) the child is under ten years old; (2) the child reports the sexual abuse within one week of the last abusive incident; and (3) the child first reports the abuse to his or her mother. *See Gerald L.C.*, 194 Wis. 2d at 557.

¶ 17. The defendant points to the failure of the facts of this case to comport with the factors enunciated in *Gerald L.C.*, and asks us to apply the factors as a bright-line rule. The victim in this case was nine or ten when the abuse allegedly occurred, but did not report

the abuse to her mother until the day after her eleventh birthday. She reported the abuse within two weeks of the last event, not one. Finally, while the victim's hysterical description of the abuse to her mother was the factor initiating this case, the victim had at an undetermined earlier time mentioned the abuse to a cousin and to someone's aunt. Neither prior instance is developed in the record.

¶ 18. Such reliance by the defendant on *Gerald L.C.* is misplaced. As the *Gerald L.C.* court explicitly conceded, "[o]f course, these factors by themselves are not dispositive, and the statements may be admissible if the declarant was still under the stress or excitement caused by the event at the time he or she made the statement." *Gerald L.C.*, 194 Wis. 2d at 558–59. Factual scenarios may exist that deviate from the *Gerald L.C.* factors, yet which allow a circuit court to reasonably determine that a child was still under the stress of excitement of the abuse. *See Moats*, 156 Wis. 2d at 98 (statement of five-year-old to mother more than one week after incident admissible); *State ex rel. Harris v. Schmidt*, 69 Wis. 2d 668, 230 N.W.2d 890 (1975) (statement of five-year-old child to defendant's probation officer 15 days after incident admissible). Accordingly, we decline to declare the *Gerald L.C.* test a bright-line rule. Even though Jeri's hearsay statements do not fall within the three factors, the statements could still demonstrate sufficient trustworthiness to be admitted under the excited utterance exception.

¶ 19. Jeri first related her allegations of sexual abuse against the defendant to her mother and sister approximately two weeks after the last alleged incident. As noted above, we have allowed an interim period to exist between the abuse and report of abuse in

child sexual assault cases. *See Moats*, 156 Wis. 2d at 97. At the time of Jeri's statement to her mother and sister relating the abuse, Jeri was alternatively described as "crying," "hysterical," "guilt-ridden," and "scared." While the record is devoid of any information concerning Jeri's conduct in the two weeks after the last incident and preceding her report, there are indications that she had just discovered that she would be spending two weeks alone with the defendant.

■

¶ 20. After acknowledging familiarity with Wisconsin case law on applying the excited utterance exception to child sexual assault cases, the circuit court found Jeri's statements to her mother, sister, and Officer Glau to be an excited utterance "under all the facts and circumstances in this case." Because we conclude that the circuit court reached a reasonable conclusion concerning the statements to the mother and sister after application of the proper standard of law, we do not believe that the circuit court erroneously exercised its discretion. Because a reasonable basis exists for the admission of the mother and sister's testimony about Jeri's statements under the excited utterance exception, we determine that the circuit court properly exercised its discretion.

¶ 21. The admissibility of Jeri's statement to Officer Glau under the excited utterance exception is a closer call. The statements to Officer Glau were made after telling the mother and sister of the abuse and were made as part of an abuse investigation. Nevertheless, the facts suggest a child "still under the stress or excitement caused by the event at the time he or she made the statement." *Gerald L.C.*, 194 Wis. 2d at 558–59.

¶ 22.　　Shortly after reporting the abuse to her mother, Jeri met with Officer Glau. During that two-hour period she continued to be in a state of emotional distress and was described as "crying," "hysterical," and "scared." Officer Glau stated that during his interview she would cry and he repeatedly had to stop the interview to allow Jeri to regain her composure. Because Jeri continued to exhibit indications of emotional distress relating to her abuse during her interview with Officer Glau, her prior rendition of her abuse to her mother and sister does not defeat application of the excited utterance exception to her statements to Officer Glau. Accordingly, we determine that the circuit court also correctly exercised its discretion when holding Jeri's statement to Officer Glau to be an excited utterance.

## B.　Residual Hearsay Exception

¶ 23.　　We note that while we determine that Jeri's statements constituted excited utterances, the State alternatively asserted at trial that the child's statements fell under the residual hearsay exception as set forth in Wis. Stat. § 908.03(24). Consistent with the directive in *Gerald L.C.*, we proceed to also consider the admissibility of such hearsay statements under the residual exception. *See Gerald L.C.*, 194 Wis. 2d at 560. Indeed, as one commentator has suggested, even where we apply the excited utterance exception to a child's statements, we may also consider the residual hearsay exception. "[I]n assessing the admissibility of hearsay in such situations the trial court should consider both avenues of admissibility. If either one, or both, are satisfied, then the statements may be admitted for purposes of the hearsay rule." 7 Daniel D. Blinka, *Wis-*

*consin Practice: Evidence* § 803.2, at 466 (1991); *see also Sorenson*, 143 Wis. 2d at 243.

¶ 24. The residual hearsay exception is designed as a catch-all exception that allows hearsay statements that may not comport with established exceptions, but which still demonstrate sufficient indicia of reliability to be admitted. *See* Wis. Stat. § 908.03(24); *Sorenson*, 143 Wis. 2d 226. In *Sorenson*, we determined that courts applying the residual hearsay exception to a child's statements must consider the following factors:

> First, the attributes of the child making the statement should be examined, including age, ability to communicate verbally, to comprehend the statements or questions of others, to know the difference between truth and falsehood, and any fear of punishment, retribution or other personal interest, such as close familial relationship with the defendant, expressed by the child which might affect the child's method of articulation or motivation to tell the truth.

> Second, the court should examine the person to whom the statement was made, focusing on the person's relationship to the child, whether that relationship might have an impact upon the statement's trustworthiness, and any motivation of the recipient of the statement to fabricate or distort its contents.

> Third, the court should review the circumstances under which the statement was made, including relation to the time of the alleged assault, the availability of a person in whom the child might confide, and other contextual factors which might enhance or detract from the statement's trustworthiness.

Fourth, the content of the statement itself should be examined, particularly noting any sign of deceit or falsity and whether the statement reveals knowledge of matters not ordinarily attributable to a child of similar age.

Finally, other corroborating evidence, such as physical evidence of assault, statements made to others, and opportunity or motive of the defendant, should be examined for consistency with the assertions made in the statement.

*Sorenson*, 143 Wis. 2d at 245–46. Using these factors, we turn then to examine the reliability of the child's statements to her mother and sister and Officer Glau.

¶ 25. Noteworthy in this examination of reliability is the void of evidence supporting a motive for the victim to fabricate. As an 11-year-old child, Jeri demonstrated to the circuit court her ability to communicate and her ability to differentiate between the truth and a falsehood. The record reflects that the defendant and Jeri maintained essentially a father-daughter relationship since she was three years old. She visited him on a weekly basis and stayed at his home overnight. Her mother had no objection to Jeri's overnight stays with the defendant. In fact, it was anticipated that Jeri would soon be spending two weeks with the defendant while her mother was out of state on vacation.

¶ 26. Jeri testified that she loved the defendant and told him that she wanted to live with him. She thought that if she lived with him that perhaps the abuse would stop. She liked getting all the gifts, all the "stuff" that he bought for her.

¶ 27. The defense was unable to develop a motive for the victim to lie. A reference at trial contained in a one-sentence question to Officer Glau suggests the possibility that Jeri might have been upset with the

defendant because he had a new girlfriend. Yet, Officer Glau testified that when he asked the defendant if "he could think of any reason whatsoever why this child would falsely accuse him," the defendant's response was that "he did not know." During the defendant's testimony he acknowledged that it made no sense for the victim to lie about the sexual abuse.

Question: And wouldn't it seem completely contrary, Mr. Huntington, to all common sense and logic that if this little girl wanted to come and live with you, she would accuse you of sexually molesting her over two years?

Defendant: It doesn't make any sense, that's right.

Hence, the attributes of the child, her close relationship with the defendant, and her lack of motive to fabricate support the reliability of the child's statements.

¶ 28. The statements at issue are Jeri's comments to her mother and sister and her interview with Officer Glau. Both the mother and sister indicated at trial that an amicable relationship existed between them and the defendant. There is no apparent motivation for them to fabricate Jeri's allegations. Likewise, Officer Glau also had no motivation to lie. He interviewed Jeri in his official capacity in order to investigate her allegations of sexual abuse against the defendant. Thus, an examination of motives of the recipients of Jeri's statements to distort the statements also supports admissibility of those statements.

¶ 29. As noted above, the circumstances under which the statements were made also enhance their reliability. Jeri made her accusations within a three-hour period under conditions which show that she was

"hysterical," "scared," and intermittently crying. The revelation of the statements to the mother occurred after she received a hysterical phone call from Jeri. The sister indicated that when she arrived Jeri was still crying and that when she spoke with Jeri alone Jeri repeated the allegations. When Jeri repeated the allegations to Officer Glau, she continued to cry. In addition, Officer Glau purposefully conducted his interview with Jeri without her mother being present in order to ensure that the mother did not prompt the responses of the child.

¶ 30. In further assessing the circumstances of the statements, we note that Jeri's statements were made approximately two weeks after the last incident of abuse. While the record does not reflect why Jeri waited two weeks before telling her story to anyone, it also does not reflect other contextual factors which detract from the truthfulness of Jeri's statements. Notably, "[u]se of the residual exception in child sexual assault cases is even less reliant upon immediacy of statements because other indicia of reliability support its trustworthiness." *Sorenson*, 143 Wis. 2d at 245 (citing Judicial Council Committee Note, 59 Wis. 2d R301 (1974)).

¶ 31. Moreover, the content of Jeri's statements reveals no indications of falsity. While the defendant is correct to point to inconsistencies in Jeri's statements as to the number of occurrences of abuse, in light of Jeri's age and the stressful nature of the incidents, we do not find such ambiguities to be of sufficient weight to defeat the other indicia of reliability. We also note that while Jeri may have vacillated on the number of occurrences, the descriptions of the actual form of the sexual abuse and her methods of avoiding further abuse that she relayed to her mother and sister and

Officer Glau were consistent with her testimony and her statements to other witnesses.

¶ 32. Finally, other corroborating evidence supports the reliability of Jeri's statements. As noted by Officer Glau in reference to Jeri's statement, Huntington corroborated "virtually everything except the sexual assault." Although the record reflects no physical evidence corroborating the alleged sexual abuse, such a dearth of evidence is of little import because the alleged abuse is not of the type that would leave telltale physical damage.

¶ 33. In sum, each of the five *Sorenson* factors weighs in favor of admissibility of the statements. Each factor enhances the reliability of the statements. Together they support the conclusion that the statements demonstrate sufficient indicia of reliability to meet the residual hearsay exception.[6]

C. Double Hearsay Statements to Nurse McCormick

¶ 34. The statements of Nurse Practitioner McCormick require a more detailed analysis, since McCormick's challenged testimony was not just the result of a personal conversation with Jeri, but was also based on third-party statements made to McCormick by Jeri's mother and Bell. Such testimony constitutes "double hearsay." To be admissible, each prong of a double hearsay statement must conform with an individual exception to the hearsay rule. *See*

---

[6] Because we determine that Jeri's statements were exceptions to the hearsay rule under the excited utterance and residual hearsay exceptions, we do not reach the State's "rule of completeness" argument.

Wis. Stat. § 908.05;[7] *State v. Kreuser*, 91 Wis. 2d 242, 249, 280 N.W.2d 270 (1979).

¶ 35. As discussed above, Jeri's statements to her mother are admissible under either the excited utterance or the residual hearsay exception. Thus, the first step of the double hearsay requirement is met. Our double hearsay inquiry then turns on whether the statements of Jeri's mother to McCormick also fit within an established hearsay exception. *See* Wis. Stat. § 908.05.

¶ 36. The State contends, and the court of appeals agreed, that the statements of the mother to McCormick fall within the medical diagnosis or treatment exception, Wis. Stat. § 908.03(4).[8] This presents us with a question of first impression. This court has never considered whether the medical diagnosis exception applies only to first parties speaking with their health care providers, or whether the exception may also be invoked to cover third parties making state-

---

[7] Wis. Stat. § 908.05 provides:

Hearsay within hearsay. Hearsay included within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule provided in this chapter.

[8] Wis. Stat. § 908.03 provides in pertinent part:

Hearsay Exceptions; availability of declarant immaterial. The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

. . .

(4) STATEMENTS FOR PURPOSES OF MEDICAL DIAGNOSIS OR TREATMENT. Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain or sensations, or the inception or general character of the cause or external source thereof as reasonably pertinent to diagnosis or treatment.

ments in the course of seeking diagnosis and medical treatment for another.

¶ 37. As a threshold matter, we note that at trial the defendant challenged the application of Wis. Stat. § 908.03(4) to McCormick's testimony by claiming Mc Cormick was not consulted for purposes of medical diagnosis or treatment. However, McCormick explicitly testified that Jeri was referred to her office by Bell for purposes of diagnosing the extent of the abuse she had suffered and determining an appropriate course of treatment. The circuit court accepted McCormick's testimony on this issue and determined that the nurse practitioner was consulted for medical purposes. This is a discretionary credibility conclusion which binds this court.

¶ 38. We are thus squarely confronted with third-party application of Wis. Stat. § 908.03(4). In considering the scope of the medical diagnosis exception, we must remain cognizant of the previously stated underlying basis for all hearsay exceptions: the presence of sufficient guarantees of trustworthiness. The primary guarantee of trustworthiness surrounding a declarant's statements offered for purposes of medical diagnosis or treatment is that, because any proposed treatment will be based in part on the exactitude and veracity of those statements, the declarant has a substantial self-interest in being truthful. *See State v. Wyss*, 124 Wis. 2d 681, 370 N.W.2d 745 (1985), *overruled on other grounds, State v. Poellinger*, 153 Wis. 2d 493, 505, 451 N.W.2d 752 (1990).

¶ 39. Young children cannot independently seek out medical attention, but must rely on their caretakers to do so. A parent's interest in obtaining necessary

medical care for a child demonstrates fundamental indicia of reliability. *See United States v. Yazzie*, 59 F.3d 807, 813 (9th Cir. 1995). Moreover, as Weinstein notes in relation to parental statements to medical professionals, "[t]he relationship between declarant and patient will usually determine admissibility. In the case of a child, a court would surely presume the absence of any motive to mislead on the part of the parents." 5 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence*, § 803.09[3], at 803–43 (Joseph M. McLaughlin ed., 2d ed. 1997). Accordingly, because Jeri's statements to her mother are admissible under a recognized hearsay exception, and because the mother's statements to McCormick fall within Wis. Stat. § 908.03(4), the circuit court's discretionary decision to admit that portion of McCormick's testimony was reasonable.[9]

¶ 40. The circuit court in this case also admitted McCormick's testimony that repeated what Jeri had told Bell. The circuit court made this ruling relying on its impression that Jeri's statements to Bell were also statements made in the course of seeking medical diagnosis or treatment. We disagree.

¶ 41. While this court has not confined the scope of Wis. Stat. § 908.03(4) solely to medical doctors, we have not previously applied the exception to counselors or social workers. We have applied the exception to statements made to psychologists. *See State v. Nelson*, 138 Wis. 2d 418, 424, 406 N.W.2d 385 (1987). We have applied the exception to statements made to psychia-

---

[9] While we acknowledge that statements made to medical professionals by parents may invoke Wis. Stat. § 908.03(4), we reiterate that such statements must be accompanied with guarantees of trustworthiness. Absent such guarantees, the circuit court may properly exclude third-party statements.

trists. *See State v. Wyss*, 124 Wis. 2d at 707. Our courts have also applied the exception to chiropractors. *See Klingman v. Kruschke*, 115 Wis. 2d 124, 126, 339 N.W.2d 603 (Ct. App. 1983). Moreover, in this case we apply the exception to statements concerning medical diagnosis or treatment that are made to a nurse practitioner on staff with a physician.

¶ 42. We decline, however, to apply the hearsay exception for statements made for medical diagnosis or treatment, Wis. Stat. § 908.03(4), to statements made to counselors or social workers. Such an expansive application of the doctrine would strain the traditional grounds for the exception. Receipt of proper medical diagnosis and treatment requires doctors to obtain basic information about a patient implicating that diagnosis and treatment. The doctor is focused on diagnosis and treatment of the individual, "not on the process of providing larger social remedies aimed at detecting abuse, identifying and punishing abusers, and preventing further mistreatment, which involves skills and social intervention lying beyond the expertise of doctors." 4 Christopher B. Mueller & Laird C. Kirkpatrick, *Federal Evidence* § 442, at 464 (2d ed. 1994).

¶ 43. Because we decline to extend the medical diagnosis or treatment exception to counselors and social workers, the double hearsay test cannot be fulfilled. Admission of the statements based on Mc Cormick's conversation with Bell was an erroneous exercise of discretion. However, we determine that the error was harmless because McCormick's rendition of Jeri's abuse was also based on her conversations with Jeri and Jeri's mother, who repeated essentially the same allegations. We conclude there is "no reasonable probability" that the error contributed to the defen-

dant's conviction. *See State v. Dyess*, 124 Wis. 2d 525, 543, 370 N.W.2d 222 (1985).

¶ 44.　We also note that the defendant asserted at oral argument, though not in briefs, that the circuit court's admission of Jeri's statements to her mother, sister, Officer Glau, Bell, and McCormick "was piling on and was cumulative." Under Wis. Stat. § 904.03, "needless presentation of cumulative evidence" is one factor in the circuit court's discretionary consideration of whether evidence is more prejudicial than probative.

¶ 45.　There was no cumulative error in this case. It is significant that at trial the defendant's theory of the case was that the defendant did not commit the crimes alleged. Inherent in this position is an assertion that the victim had falsified her accusations. When the State pressed the court on whether the defense could attack inconsistencies in Jeri's testimony, the defense responded, "[T]hat's our entire defense." The defense repeatedly proved this assertion by attacking perceived inconsistencies in Jeri's statements to each of the other witnesses. By attacking Jeri's testimony in such a manner, the defendant made the testimony of the individuals to whom Jeri had repeated her accusations material to the case. Accordingly, the circuit court's failure to find the repetitive testimony cumulative and prejudicial was not an erroneous exercise of discretion.

## II.　Expert Testimony of Doctor

¶ 46.　The defendant also challenges the testimony of the State's child abuse expert, in which Dr. Levitt responds to questions concerning the victim's delay in reporting the abuse and conflicting assertions as to the actual number of instances of abuse. The

defendant contends that the witness's testimony was offered for the purpose of assessing the credibility of statements of another witness—the victim.

¶ 47. A witness may not testify that another competent witness is telling the truth. *See State v. Jensen*, 147 Wis. 2d 240, 249, 432 N.W.2d 913 (1988); *State v. Haseltine*, 120 Wis. 2d 92, 96, 352 N.W.2d 673 (Ct. App. 1984). However, an expert witness may offer relevant testimony that a victim's behavior is consistent with the behavior of similarly situated victims. *See Jensen*, 147 Wis. 2d at 256.

¶ 48. The question of whether a witness has improperly testified as to the credibility of another witness is a question of law which we review independently. *See State v. Davis*, 199 Wis. 2d 513, 519, 545 N.W.2d 244 (Ct. App. 1996). Upon review of the record, we decline to adopt the defendant's characterization of Dr. Levitt's testimony.

¶ 49. The State asked Dr. Levitt whether Jeri's difficulty at school was consistent with behavior of other sexual abuse victims. Dr. Levitt responded in the affirmative. The State then asked if Jeri's failure to report the abuse for a lengthy period of time was consistent with other victims of sexual abuse. Dr. Levitt answered that delayed disclosure "would be entirely what's expected in child sexual abuse." The State followed up with the inquiry, "Do you have an opinion. . .as to whether this child's delayed reporting of this, given that the accused is a stepfather or father figure would be consistent with the delays that you have observed" in other victims? Dr. Levitt responded in general that "when a child is abused by a family

member. . .there are inherent behavioral directions in. . .not telling, when there is that secrecy."

¶ 50. Finally, the State asked Dr. Levitt "whether this child's inability to recount the exact number of times that she had been sexually abused by her stepfather is consistent with. . .that type of behavior which you've noted in your experience. . . ." Dr. Levitt replied that "whenever child sexual abuse is happening within a child's family. . .the exact number of times becomes very confounded and that is entirely consistent with child sexual abuse accommodations syndrome."

¶ 51. As the testimony highlighted above indicates, this is not a case where an expert testifies that there "was no doubt whatsoever" that the accuser was a victim of moral turpitude. *See Haseltine*, 120 Wis. 2d at 95. This is also not a case where the expert opined that the victim "was being totally truthful" with the authorities. *See State v. Romero*, 147 Wis. 2d 264, 277, 432 N.W.2d 899 (1988). Rather, Dr. Levitt's testimony, viewed in its entirety and in the context of the questions to which it was responsive, merely offered her expert opinion that the facts of Jeri's case are what would be expected of, or what would be consistent with, facts surrounding other victims of childhood sexual abuse. Accordingly, Dr. Levitt did not violate the prohibitions of *Haseltine* or *Jensen* and the circuit court properly overruled the defendant's objection and admitted the testimony.

### III. Conclusion.

¶ 52. Because we find that Jeri's statements to her mother and sister and Officer Glau constitute excited utterances and display sufficient indicia of reli-

698

ability to invoke the residual hearsay exception, the circuit court's admission of such testimony was not an erroneous exercise of discretion. Similarly, because Jeri's mother's recital of the allegations to McCormick fall within the medical diagnosis or treatment hearsay exception, that testimony was also properly admitted. The circuit court should have excluded McCormick's testimony relating to statements made by Bell about Jeri's accusations, because the medical diagnosis or treatment exception does not extend to social workers. However, such error was harmless. Finally, because Dr. Levitt did not testify as to Jeri's truthfulness, her testimony was properly admitted. Accordingly, the decision of the court of appeals is affirmed.

*By the Court.*—The decision of the court of appeals is affirmed.

¶ 53. JANINE P. GESKE, J. (*dissenting*). Although I believe the majority accurately analyzes the evidentiary issues under current Wisconsin case law, I dissent.

¶ 54. Our current case law stretches the excited utterance and the general residual hearsay exceptions in child sexual assault cases to the point that hearsay statements admitted under them no longer possess the inherent trustworthiness justifying admissibility.

¶ 55. The majority correctly applies the holdings in *State v. Gerald L.C.*, 194 Wis. 2d 548, 535 N.W.2d 777 (Ct. App. 1995), *State v. Moats*, 156 Wis. 2d 74, 457 N.W.2d 299 (1990), and other prior cases to the issue of admissibility of Jeri's statements to her mother, her sister, and the police officer under the excited utterance exception, Wis. Stat. § 908.03(2). Under that exception, the majority accurately points out that "the

related statement must be made while the declarant is still under the stress of excitement caused by the event or condition." Majority op. at 682. The inherent trustworthiness of a hearsay statement under that exception emanates from the temporary stress of excitement arising from the event and still existing at the time the statement is made. In *Christensen v. Economy Fire & Cas. Co.*, 77 Wis. 2d 50, 58, 252 N.W.2d 81 (1977), quoting *Cossette v. Lepp*, 38 Wis. 2d 392, 398, 157 N.W.2d 629 (1968), this court stated: "It is the condition of excitement that temporarily stills the capacity for reflection which is the significant factor assuring trustworthiness, assuring that the declarant lacked the capacity to fabricate." Rather than using the traditional analysis for the exception as described in *Christensen*, the majority, consistent with our recent cases, applies what has become a looser test of admissibility under § 908.03(2).

¶ 56. The looseness occurs because this court no longer looks for evidence that the declarant is still under "the condition of excitement" from the event when making the statement. The court looks to see only if the declarant is upset when making the statement. I do not for one moment question that a sexual assault of a child is an extremely stressful event for the child. Nor do I question that a child who has been assaulted may well be under the stress of the event for a prolonged period of time. There is a fundamental difference, however, between a statement "relating to a startling event made while the declarant was under the stress of excitement caused by the event" and a declarant later becoming stressed and upset while describing an earlier event. The latter declaration does not provide the inherent trustworthiness envisioned in the excited utterance exception. Discussing Wisconsin

case law, Professor Blinka cautions that "the temporary relationship between the startling event and the making of the statement has been most sorely tested in instances where children have reported sexual or physical abuse long after the event occurred." 7 Daniel D. Blinka, *Wisconsin Practice (Evidence)* § 803.2, at 465 (1991).

¶ 57. Here we know that two weeks after the last alleged incident, Jeri called her mother on the telephone, crying and hysterical. There is nothing in the record about Jeri's emotional condition during the two preceding weeks. In fact, the majority acknowledges that "the record is devoid of any information concerning Jeri's conduct in the two weeks after the last incident and preceding her report. . . ." Majority op. at 684–85. The circuit court knew only that Jeri was distressed at the time she recounted these alleged incidents two weeks after the last incident. The fact that "there are indications that she had just discovered that she would be spending two weeks alone with the defendant," majority op. at 685, does not establish that Jeri was still under the stress of excitement from an assaultive event two weeks earlier.

¶ 58. After concluding that Jeri's hearsay statements were properly admissible under the excited utterance exception, the majority also analyzes the admissibility of those statements under Wis. Stat. § 908.03(24), the general residual exception. The majority relies on *State v. Sorenson*, 143 Wis. 2d 226, 245–46, 421 N.W.2d 77 (1988), where this court agreed that § 908.03(24) could be used to admit hearsay statements by children in sexual abuse cases if the court considered the appropriate factors, including the attributes of the child, the child's relationship to, and the motivations of, the person to whom the statement

was made, the circumstances under which the statement was made, the content of the statement itself, and other corroborating evidence.

¶ 59. Unfortunately, this court has created an evidentiary quagmire by asking trial judges to decide the admissibility of hearsay statements pursuant to Wis. Stat. § 908.03(24) by using the *Sorenson* factors. The general residual exception originally was applied where the inherent trustworthiness of the statement, although not covered by other exceptions, was clear and fairly easy to satisfy based on sufficient surrounding circumstances. For example, in *Wirth v. State*, 55 Wis. 2d 11, 197 N.W.2d 731 (1972), this court concluded that a prepackaged, sealed bottle of codeine-type cough syrup was admissible to prove the contents of the bottle. Indicia of inherent trustworthiness were obvious and easily satisfied based on the surrounding circumstances which included special storage, an unbroken seal, dispensing restrictions, and labeling and packaging regulations. *See Wirth*, 55 Wis. 2d at 15. In *State v. Peters*, 166 Wis. 2d 168, 179–80, 479 N.W.2d 198 (Ct. App. 1991), the court of appeals emphasized that "before otherwise inadmissible statements can be admitted under the residual exception, we must be confident that there are guarantees of trustworthiness sufficient to allow the jury to depend on such evidence to make decisions of the utmost importance."

¶ 60. In *Sorenson*, this court expanded the circuit court's duty to decide hearsay admissibility by looking at and weighing a myriad of credibility-related factors. Rather than considering just the circumstances surrounding the making of the statement, *Sorenson* tells the circuit court to consider factors like the child's fear of punishment and other personal interest, the motivations and biases of the person recounting the child's

702

statement, contextual factors which might enhance or detract from the statements' trustworthiness, etc. *See Sorenson*, 143 Wis. 2d at 245–46. Many of the factors that the circuit court applies under *Sorenson* are the same type of factors which a fact-finder would ordinarily consider in deciding what credibility and weight to give a witness's testimony. Under *Sorenson*, the circuit court makes that assessment in deciding whether a hearsay statement is admissible and can be heard by the jury.

¶ 61. Reading the majority opinion, it becomes apparent that what should be a relatively easy admissibility determination on the applicability of a well-established hearsay exception—a *Sorenson* analysis under Wis. Stat. § 908.03(24)—has turned into a complicated credibility determination by the judge. For example, the majority points out that the record shows that Jeri "loved the defendant," and that there is no "evidence supporting a motive for the victim to fabricate." Majority op. at 688. The majority also considers that Jeri was emotional during the recounting of the incidents (not that she was emotional since the alleged incidents), that there are no "other contextual factors which detract from the truthfulness of Jeri's statements," and that "the content of Jeri's statements reveal no indications of falsity." Majority op. at 690. We have traveled a long distance under the general residual exception from admitting the label on a bottle of cough syrup to admitting hearsay allegations of sexual assault two weeks after the last alleged incident.

¶ 62. The United States Supreme Court has held that a defendant's Sixth Amendment[1] right to confront

---

[1] The Sixth Amendment to the United States Constitution provides in part: "In all criminal prosecutions, the accused shall enjoy the right. . .to be confronted with the witnesses against

his or her accusers is not violated if the hearsay statement is admitted under a "firmly rooted exception." *Ohio v. Roberts*, 448 U.S. 56, 66 (1980); *State v. Hickman*, 182 Wis. 2d 318, 328, 513 N.W.2d 657 (Ct. App. 1994). *See also White v. Illinois*, 502 U.S. 346, 355 n.8 (1992). As this court continues to entertain a looser reading of Wis. Stat. § 908.03(2), while also relying on *Sorenson*'s very liberal reading of Wis. Stat. § 908.03(24), we risk extending our hearsay exceptions well beyond their original intent. We thereby also risk problems under the Confrontation Clause. *See Idaho v. Wright*, 497 U.S. 805, 817, 823–27 (1990).

¶ 63. I dissent based on the majority's loosened application of the excited utterance exception and its use of the *Sorenson* factors for the residual hearsay exception. I would overrule our decision in *Sorenson* and would urge this court to devise a way to halt the unnecessary, and dangerous, expansion of these two hearsay exceptions.

¶ 64. For the foregoing reasons, I respectfully dissent.

¶ 65. I am authorized to state that Chief Justice Shirley S. Abrahamson and Justice William A. Bablitch join this opinion.

---

him; [and] to have compulsory process for obtaining witnesses in his favor. . . ."