State of Wisconsin, Plaintiff-Respondent,
v.
Carlos Rene Delgado Defendant-Appellant.
No. 03-2884.
Court of Appeals of Wisconsin.
Opinion Filed: March 31, 2005.
Before Deininger, P.J., Vergeront and Higginbotham, JJ.
¶1 DEININGER, P.J.
Carlos Delgado appeals an order that denied his motion under WIS. STAT. § 974.06 (2003-04)[1] for a new trial. He asserted in his motion that his previous postconviction counsel was ineffective for failing to seek relief from his sexual assault convictions on the grounds that his trial counsel had been ineffective for not objecting to certain hearsay testimony. Because we conclude that Delgado suffered no prejudice from any failure on trial counsel's part to object to the testimony that Delgado contends was inadmissible hearsay, neither his trial counsel nor his previous postconviction counsel rendered ineffective assistance. We therefore affirm the order denying postconviction relief.

BACKGROUND
¶2 The State charged Delgado in 1990 with six counts of first-degree sexual assault of two girls who were between six and eight years old at the time of the assaults. A jury found Delgado guilty of all six counts, but the supreme court reversed the convictions after concluding that the jury included a biased juror. See State v. Delgado (Delgado I), 223 Wis. 2d 270, 588 N.W.2d 1 (1999). The State retried Delgado and a jury again found him guilty of six counts of first-degree sexual assault. The circuit court denied his motion for postconviction relief and he appealed the judgment of conviction and the order denying relief under WIS. STAT. RULE 809.30. See State v. Delgado (Delgado II), 2002 WI App 38, 250 Wis. 2d 689, 641 N.W.2d 490. We rejected his claims of error regarding the testimony of an expert witness and the State's use of it, and we affirmed his convictions and the denial of postconviction relief. Id., ¶1. The supreme court denied Delgado's petition for review.
¶3 Represented by different postconviction counsel, Delgado then moved for a new trial under WIS. STAT. § 974.06, claiming that his previous postconviction counsel should have sought relief from his convictions grounded on his trial counsel's failure to object to certain hearsay testimony presented at the second trial. The circuit court denied Delgado's motion, concluding that Delgado had not been prejudiced by the admission of the "peripheral" hearsay testimony in light of the "overwhelming," "untainted" evidence of his guilt. Delgado appeals the order denying his motion for postconviction relief.

ANALYSIS
¶4 As we have described, this appeal involves a "layered" claim of ineffective assistance of counsel, in that Delgado claims in his present motion that his previous postconviction counsel was ineffective for failing to raise the issue of trial counsel's ineffectiveness. The State contends that, because postconviction counsel is not required to raise every arguably meritorious claim, Delgado can only prevail on his claim of postconviction counsel's ineffectiveness if the underlying claim regarding trial counsel's ineffectiveness is "an obvious winner." We agree that we can most efficiently resolve this appeal by first considering the merits of Delgado's claim that his trial counsel rendered ineffective assistance. Because we conclude that Delgado's trial counsel was not ineffective, Delgado's postconviction counsel was likewise not ineffective for failing to raise the issue of trial counsel's alleged ineffectiveness.
¶5 To prove ineffective assistance of counsel, Delgado must establish that his trial counsel's performance was deficient and that the deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). A lawyer's performance is not deficient unless he or she "made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment." Id.
¶6 Even if Delgado can show that his trial counsel's performance was deficient, however, he is not entitled to relief unless he also demonstrates that his counsel's errors "were so serious as to deprive him of a fair trial, a trial whose result is reliable." Id. To satisfy the prejudice prong Delgado "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability is a probability "sufficient to undermine confidence in the outcome." Id.
¶7 We need not address both the deficient performance and prejudice components of an ineffective assistance claim if the defendant cannot make a sufficient showing on one. See id. at 697. The issues of performance and prejudice constitute mixed questions of law and fact. See State v. Sanchez, 201 Wis. 2d 219, 236, 584 N.W.2d 69 (1996). We will not upset the trial court's findings of historical fact unless they are clearly erroneous, but whether counsel's performance was deficient or resulted in prejudice are legal questions we decide de novo. See id. at 236-37.
¶8 At the core of this dispute is certain trial testimony given by a social worker/psychotherapist, the same witness who Delgado claimed in his direct appeal of the present convictions had improperly vouched for the victims' credibility. See Delgado II, 250 Wis. 2d 689, ¶5. In his present claim of error, Delgado focuses on portions of the social worker's testimony in which she related to the jury things the victims had told her during therapy sessions. Delgado's trial counsel lodged several objections to the testimony in question, including one "continuing objection with regard to hearsay." The circuit court permitted the testimony, saying, "It is part of the treatment process.... It is an exception."
¶9 Based on the court's comment in denying the hearsay objection, it apparently admitted the testimony under the hearsay exception for "[s]tatements made for the purpose of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment." WIS. STAT. § 908.03(4). Delgado argues that, under the holding in State v. Huntington, 216 Wis. 2d 671, 594-95, 575 N.W.2d 268 (1998), because the witness was not a medical doctor or a psychologist, the statements the victims made to her are not admissible under § 908.03(4). He faults his trial counsel for not being aware of Huntington and failing to bring its holding to the trial court's attention.
¶10 The State responds that the medical diagnosis exception in WIS. STAT. § 908.03(4) is not limited to statements made to a physician or psychologist, but that it also extends to statements made by a client to a social worker when the worker is engaged in providing psychotherapy, as opposed to investigating an abuse allegation. The State contends that State v. Nelson, 138 Wis. 2d 418, 431, 406 N.W.2d 385 (1987), supports this view, and that trial counsel's performance was not deficient for failing to cite Huntington when he objected to the hearsay testimony.
¶11 We find it unnecessary to resolve the question of whether the testimony in question was inadmissible under Huntington or admissible under Nelson because we conclude that its admission did not affect the outcome of Delgado's second trial. We first describe the inadmissible testimony that Delgado contends his trial counsel should have prevented the jury from hearing. We then review the remainder of the State's evidence and conclude that the social worker's relatively brief references to things the victims had told her added very little, if anything, to the graphic testimony of the victims themselves and the State's other evidence corroborating their testimony.
¶12 The social worker related seven specific statements that the victims made to her during the course of their sessions with her:
1. The victims said that Delgado had emotionally and physically abused their mother.
2. The older victim said that Delgado had "touched [her] private parts and he put his penis in [her]," and the younger victim said that Delgado had done the same to her.
3. The younger victim said that Delgado sexually assaulted her in Puerto Rico.
4. The younger victim said that Delgado would sexually assault her in a closet, and that if she resisted, Delgado would beat her with a cane.
5. The younger victim said that Delgado on one occasion made her sit on his lap while watching television and "his penis was there."
6. Both victims said that they feared for their lives and were very afraid of Delgado. Both also said that Delgado had threatened to kill them and their mother if either victim told anyone about the sexual and physical abuse.
7. Each victim reported "nightmares, difficulty sleeping ... hearing voices ... that [the older victim] is always afraid that someone is following her ..." and "[that they suffer from] sleep walking."
¶13 In addition to the foregoing hearsay statements, the social worker testified to some more recent statements the victims had made to her just before Delgado's second trial. She testified that both victims told her that they were still afraid of Delgado, and that they were fearful of crying in front of him. In addition, the older victim was considering whether to testify at the second trial, while the younger was "up" for testifying. Finally, she testified that, although some ten years had elapsed since the alleged sexual and physical abuse, the victims still feared appearing vulnerable in front of Delgado, and that the younger victim "struggles a lot with her stomach, with her intestines, and she tells me that she has been in and out of the hospital a lot."
¶14 We next consider the evidence other than the social worker's hearsay statements that the State presented at trial. The State's principal witnesses at Delgado's second trial were the two victims, who were now sixteen and eighteen years old. The State charged Delgado with committing six separate assaults. He allegedly assaulted each girl in three different Milwaukee residences they occupied during a six-month period in 1989-90.
¶15 The younger victim testified that Delgado sexually assaulted her repeatedly at each of the three Milwaukee residences. Specifically, she testified that one evening while she was living with her family at "LuLu's house," her mother left the living room to go to sleep, leaving the victim alone with Delgado while the two watched television. She testified that Delgado then began "touching [her] on [her] private part below" with his hands. She also testified that Delgado sexually assaulted her "constantly every single day" while the family lived at LuLu's house.
¶16 The younger victim further testified that at a home at 6th and Mitchell (the "yellow house"), Delgado would often play pornographic video tapes and masturbate in front of her before forcing her to touch his penis. At other times, Delgado would masturbate in front of her and touch her vagina and breast while watching the videos. He would also force her to place her mouth on his penis. According to the younger victim, "a lot of incidents like that" occurred, but she could not recall the exact number of times Delgado sexually assaulted her while living at the "yellow house." She also testified that, while at the "yellow house," Delgado took her into a closet in the attic and partially penetrated her with his penis. She told the jury that she "start[ed] screaming and crying" as a result. She testified that, on another occasion, Delgado took her into the same closet and forced her to perform oral sex on him, as a result of which he ejaculated in her mouth. She also stated that there were "other times" Delgado placed his penis up against her vagina.
¶17 As to the sexual assaults that occurred while at an aunt's house, the younger victim's testimony was more vague. She testified that she could not remember a specific incident that occurred while living at that house, but she did testify that the sexual assaults were ongoing during that time period. The State introduced as evidence the younger victim's testimony from Delgado's first trial, and the jury heard excerpts read from the trial transcripts. This earlier testimony included the younger victim's account that, while at the aunt's house, Delgado touched her "privates" with his hands and put "his privates in [her] privates," and that on another occasion Delgado placed his penis in her mouth. This victim also testified that Delgado sexually assaulted her on several occasions when she lived in Puerto Rico before coming to Milwaukee in 1989, and that the Milwaukee assaults during August 1989 through January 1990 were continuous, ongoing events.
¶18 The younger victim's testimony also included accounts of Delgado's violence and frequent beatings, inflicted upon her, her sister and the girls' mother. According to this victim, Delgado would threaten to kill her, her sister and her mother if she reported her sexual and physical abuse to anyone outside the family. He would also beat her when she tried to resist his attempts to sexually assault her, thereby forcing her to submit to him. The younger victim told jurors that she was fearful of Delgado.
¶19 The older victim also provided detailed, compelling testimony. Like her sister, the older victim testified that Delgado sexually assaulted her at all three locations between August 1989 and January 1990. Specifically, she told the jury that while at LuLu's house, Delgado had her sit on his lap while they were watching a cartoon videotape and he "moved his penis around [her] with his clothes on." She told the jury this was the only incident at LuLu's house that she could remember specifically. Regarding sexual assaults that occurred at the "yellow house" on 6th and Mitchell, the older victim testified that Delgado forced her to watch a pornographic videotape and then made her place her mouth on his penis. She also stated that while at the "yellow house" Delgado on several occasions laid on top of her in the morning while she was in bed, touching her vagina with his fingers and at times partially penetrating her vagina with his penis.
¶20 Her recollection of events at the aunt's house was not as clear as it was regarding the assaults at the other two locations. The older victim testified that, while at the aunt's house, Delgado took her to Chicago and on the ride home stopped at a fast food restaurant. There, while in the car, he forced her to touch his penis while he placed his fingers in her vagina and ejaculated. On another occasion at the aunt's house, Delgado took her to the basement and pulled her pants down, but pulled them back up when he thought he heard footsteps. The State again relied on testimony from the earlier trial to supplement the older victim's accounts about assaults occurring at the aunt's house. In her earlier testimony, this victim had stated that, while at the aunt's house, Delgado touched her chest and vagina, and on one occasion while in the basement, Delgado pushed her against the wall, pulled her pants down and placed his penis on her vagina. She also testified at the first trial that there were "other incidents" that occurred at the aunt's house of a similar nature. Finally, she had previously testified that Delgado would put his penis into her vagina, and that he would do this in her room and in the basement at the aunt's house.
¶21 Also like her sister, the older victim testified to her fear of Delgado and of his violence and physical abuse. She testified that Delgado threatened to kill her, her sister and her mother if she ever reported the sexual abuse she had suffered. She described to the jury that Delgado would beat her mother, and on one occasion, gave her a black eye. She also testified that she saw Delgado hit her sister, the younger victim, with a cane because the younger girl had come to her mother's aid while Delgado was beating the mother. The older victim stated that she, too, was hit with the cane on other occasions, and that she was generally frightened of Delgado.
¶22 The State presented evidence to corroborate the victims' testimony. An assistant principal at the victims' school testified that the younger victim revealed her abuse during an unexpected visit to the assistant principal's office arranged after the girl's teacher noticed signs of physical abuse on her arms. The principal also told jurors that the younger victim told her that Delgado had hit her with a cane, and that Delgado "had been doing nasty things to her," including putting his "thing" in between her legs, placing his penis in her mouth, and ejaculating. The assistant principal further informed the jury that, according to the younger victim, this sexual abuse had been ongoing since the victim had lived in Puerto Rico. She also testified that the younger victim appeared very fearful while telling her these things.
¶23 The assistant principal also provided corroborating testimony regarding the older victim's accounts of physical and sexual abuse. The assistant principal told the jury that according to the older girl, Delgado had been touching her with his "thing," including contact with her crotch area and her mouth, and that Delgado had ejaculated when touching the girl in this fashion. The assistant principal also told the jury that the older child was also very fearful of Delgado.[2]
¶24 The victims' mother testified that Delgado often beat her daughters and her, and that he had threatened to kill her and her children. The mother also testified that the victims were afraid of Delgado. A detective who investigated the sexual assaults testified that the younger victim told him that Delgado had beaten her with a cane, and that he had put his "private part" into her mouth, into her "front private part" and into her "behind private part." The younger girl also told the detective that Delgado did these things to her in the living room and in her bedroom. The older victim told the detective that Delgado had put his "thing" in the girl's "front," in her "back" and in her mouth, and that he had "sucked on her neck and breast." The older girl also told the detective these things took place in the basement of their house.
¶25 Finally, the State presented medical evidence. A nurse specializing in treatment of sexual assault victims testified that an examination of the older victim revealed an opening in her hymen greater than 2.5 centimeters, which, according to the witness, was consistent with the victim's claim that Delgado had penetrated her vagina with his penis. During this testimony, the jury was told, without objection from Delgado, that during the younger girl's examination she told a nurse that Delgado had hit her with a cane and struck her numerous times. The younger girl also told the nurse that Delgado had orally, anally, and vaginally penetrated her every day before school and before she went to bed. When the older victim was examined, she told the nurse that Delgado had been placing his "thing" into her mouth, anus and vagina since she was seven years old.
¶26 The question before us is whether Delgado has shown a reasonable probability that, but for the hearsay testimony provided by the social worker, the result of his trial would have been different. See Strickland, 466 U.S. at 694 Delgado testified at his second trial and denied sexually assaulting either girl. He characterizes the trial as a "credibility contest" between himself and the victims. He asserts that the victims' testimony was "sketchy," that the social worker's testimony was more detailed and specific, and, thus, that the hearsay was more damaging than the victims' accounts. To the contrary, our review of the trial transcript convinces us that the social worker's references to what the victims had told her were, in most cases, much less detailed or specific than the accounts the victims provided in their trial testimony.
¶27 The social worker did testify regarding some emotional or psychological symptoms that the victims reported to her that they did not independently relate during their testimony. The worker testified that each victim reported "nightmares, difficulty sleeping [and] hearing voices," that the older victim "is always afraid that someone is following her," and that both girls engaged in "sleep walking." Although these symptoms were not testified to by the victims themselves, we are unable to conclude that this evidence was sufficient to create a reasonable probability that, but for its admission, the jury would have acquitted Delgado. The social worker testified that she met with the girls for therapy sessions "maybe 30 times" over a period of almost two years, and we conclude that jurors could reasonably infer from this fact alone that the girls were exhibiting emotional or psychological symptoms prompting the need for treatment.
¶28 Delgado also argues that the social worker's testimony concerning her more recent conversations with the two victims prior to the second trial constitutes "new evidence" which he claims was "essential" to the State's case, and thus prejudicial to him. We reject this contention as well. We conclude that the final outcome of the trial would not have been different if the trial court had prevented the social worker from telling the jury that the victims still feared Delgado, that they were afraid to appear vulnerable before him, and that only one of the victims was "up" for testifying. As we have noted, both victims personally testified to their fear of Delgado. The social worker's testimony regarding the victims' state of mind during her recent contact with them therefore added little of relevance to jurors' knowledge.
¶29 Delgado implies that this case was a close one. He maintains that the medical evidence the State presented did not conclusively support the victims' claims that Delgado repeatedly sexually assaulted them. He points out that the medical examination of the younger victim did not reveal any abnormalities consistent with sexual trauma, and that a medical expert testified that the damage to the older victim's hymen was consistent with physical activity such as horseback riding, normal walking and bicycle riding. Delgado also notes that neither victim had anal trauma, despite their claims that Delgado had penetrated them anally. He also emphasizes that there were no hairs, semen or blood found in the vagina or anus of either victim.
¶30 We conclude that these facts do not make this a close case. The State's medical expert explained that the results of the victims' examinations did not rule out that sexual assaults had occurred. The expert also testified that in cases of partial penetration, a female child's hymen might not suffer damage that would necessarily be detected during a medical exam. And, although the younger child lacked observable damage to her hymen, the expert testified that the medical report indicated erythema, a redness around the vaginal opening consistent with penile penetration. The expert testified that the lack of anal trauma also does not rule out that anal sexual assault occurred. In short, although the medical testimony did not provide ironclad corroboration of the victims' accounts, neither did it undermine their testimony, and, in the case of the older victim, it provided some support for her testimony that Delgado had penetrated her vagina.
¶31 Finally, we note that the only theory the defense offered at trial to explain why the victims would make up their allegations was that Delgado was a strict disciplinarian, whom the girls resented for his attempts to discipline them. Delgado took the stand in his own defense and admitted to spanking both victims and to striking one with a cane. Delgado also admitted that he had struck his wife with his closed fist after an argument and had once hit her with sufficient force to cause a black eye. Delgado told the jury that his daughters were afraid of him because of his use of corporal punishment. We conclude that this testimony did not undermine the victims' testimony so much as it corroborated the victims' testimony regarding Delgado's abusive behavior toward them and their mother.
¶32 Based on our review of the evidence presented at trial, we conclude that Delgado has not met his burden to show a reasonable probability that the exclusion of the social worker's hearsay testimony would have resulted in a different outcome. The social worker's testimony regarding statements the victims made to her during therapy sessions added nothing to the victims' own detailed accounts of the assaults. Moreover, hearsay evidence presented by other witnesses, which Delgado does not challenge as having been improperly admitted, included many of the same accusations by the victims as the social worker's challenged testimony. The few hearsay statements to which the social worker testified that did not directly overlap testimony from other witnesses were insignificant and did not directly bear on Delgado's guilt or innocence.
¶33 In short, this was not a close case as Delgado maintains, and his own testimony did little to advance a viable defense theory, serving instead to confirm several aspects of the victims' accounts. Our confidence in the verdict is not undermined by the fact that the jury heard hearsay statements from the social worker that may have been deemed inadmissible if more effectively objected to. Accordingly, Delgado suffered no prejudice. His trial counsel thus did not render ineffective assistance, and neither did his first postconviction counsel for failing to challenge trial counsel's effectiveness on this ground.

CONCLUSION
¶34 For the reasons discussed above, we affirm the appealed order denying Delgado's request for a new trial.
By the Court.  Order affirmed.
NOTES
[1] All references to the Wisconsin Statutes are to the 2003-2004 version unless otherwise noted.
[2] Delgado's trial counsel objected numerous times to the assistant principal's testimony on hearsay grounds but was overruled each time. After the assistant principal concluded her testimony, Delgado moved for a mistrial on the basis that the court should have excluded the assistant principal's hearsay testimony. The trial court denied the motion, ruling that the testimony had not been offered for the truth of the matters asserted, but only to describe information the assistant principal had gathered in pursuit of her statutory duty to report possible cases of physical and sexual abuse of children. The court also reasoned that, even if the testimony was hearsay, it was admissible under the excited utterance exception. Delgado does not challenge either the admission of the assistant principal's testimony or the denial of his mistrial motion in this appeal.